JAMES KELLEY v. STATE.

No. A-5141.  Opinion Filed June 19, 1925.
(236 Pac. 915.)

52

A. O. Manning, for plaintiff in error.

George F. Short, Atty. Gen., and G. B. Fulton, Asst. Atty. Gen., for the State.

DOYLE, J. The information in this case charged that the defendant, James Kelley, "on or about the 26th day of December, 1923, did then and there willfully, wrongfully, and unlawfully sell and dispose of intoxicating liquors containing more than one-half of one percent. of alcohol by volume measure, to wit, one pint of corn whisky, contrary to," etc. A demurrer to the information was filed and by the court overruled. The case thereupon proceeded to trial upon the plea of not guilty. The jury returned a verdict, finding the defendant guilty and fixing his punishment at a fine of $200 and two months in jail. To reverse the judgment rendered on the verdict, he appeals.

The first question presented is the sufficiency of the information. It is argued by counsel for the defendant that the information in this case does not comply with the

requirements of the statute and fails to state a public offense, in that it fails to state the name of the person to whom the alleged sale was made, or to state that the name of the person is to the state unknown.

The Code of Criminal Procedure, section 2556, C. S. 1921, provides:

"The indictment or information must be direct and certain as it regards:

"First. The party charged.

"Second. The offense charged.

"Third. The particular circumstances of the offense charged when they are necessary to constitute a complete offense."

It is a well-settled rule in this state that in charging a sale of intoxicating liquor the information should state the name of the purchaser, if it is known; if the name of the purchaser is not known, it must be alleged that such name is unknown. Fletcher v. State, 2 Okla. Cr. 300, 101 P. 599, 23 L. R. A. (N. S.) 581; Lightle v. State, 2 Okla. Cr. 334, 101 P. 608; Banks v. State, 2 Okla. Cr. 339, 101 P. 610; Mitchell v. State, 2 Okla. Cr. 442, 101 P. 1100; Simmons v. State, 2 Okla. Cr. 446, 101 P. 1102; Moss v. State, 4 Okla. Cr. 247, 111 P. 950.

In this case the information was signed and verified by the county attorney. The evidence for the state discloses that at the time the information was drawn, verified, and filed, and at every subsequent stage of the proceedings, the name of the person to whom the sale was supposed to have been made was known to the county attorney. For the reasons stated, the demurrer to the information should have been sustained.

The next assignment is that the court erred in overruling the defendant's motion at the close of the state's evidence to advise a verdict of not guilty.

Carl Seeberger, first witness for the state, testified that on the day alleged Lester Raider told him that he wanted some whisky, and he went to the roundhouse in Fairview; there the defendant poured something into an oil can. That with Jim Hale he took this can and delivered it to Lester Raider, and Raider paid him $2. That this was about 11 o'clock in the forenoon. That the next morning he gave the money to the defendant. Called by the state in rebuttal, he stated he gave the money to W. H. Campbell; that he told the county attorney all the facts including the name of the party to whom the liquor was delivered. Jim Hale testified in substance to the same facts, save that he did not know what Seeberger did with the money he received from Raider. At the close of the state's evidence there was a motion by the defendant for a directed verdict on the ground that the evidence was insufficient to connect him with the alleged offense, and because there was no corroborating evidence. The motion was overruled.

The defense was an alibi, supported by the testimony of Mrs. E. M. King, mother of the defendant; that she left the farm, 21 miles west, and came to Fairview with the mail carrier and they met the defendant 15 miles west of Fairview, between 9 and 10 o'clock that morning. The testimony of Jim King, mail carrier, is the same. Three or four other witnesses testified that they saw the defendant leave Fairview about 9 o'clock that morning. H. H. Campbell testified that on December 27th, in the morning, Carl Seeberger gave him $2 and told him to give it to Ed Boyce, who worked at the roundhouse, which he did. As a witness in his own behalf, the defendant testified that he did not sell any liquor to any person; that he never received any money from Carl Seeberger, nor did he know anything about the liquor in question; that he left Fairview at 9 o'clock for the farm, 21 miles west, and met the mail carrier and his mother coming to town about 15 miles

west about 10 o'clock, and went on to the farm and did not return to Fairview until 3:30 or 4 o'clock that afternoon.

An examination of the record discloses that there was no evidence that tended to connect the defendant with the commission of the offense other than that of the two witnesses who upon their own testimony were accomplices, and the rule of law forbidding a conviction upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, is under the statute (section 2701, C. S. 1921), positive and peremptory.

Complaint is also made as to alleged prejudicial remarks of the court. The record discloses, with reference to the ruling of the court on the motion to advise a verdict, the following proceedings:

"Mr. Manning: I desire to argue this motion.

"The Court: I don't care to hear any argument. (Overruled.)

"Mr. Manning: Very well, I desire to submit one authority (and passes to the court 111 P. opened at page 950; the same being Moss v. State. The Court refuses to look at the citation.)

"Mr. Manning: If the court don't desire to read the citation, give us exception to ruling of the court.

"The Court: Mr. Manning, you are insinuating that this court is attempting to railroad this prosecution through; you have done it before, and I will have you understand that this court is entitled to some consideration, and if you attempt to do this again I will fine you for contempt of court and send you to jail.

"Mr. Manning: To all of which statements of the court the defendant objects for the reason that they are being made in the presence of the jury and are highly prejudicial to his rights, and creates a prejudice in the minds of the jury against this defendant and his counsel, and excepts to such statements.

"The Court: Exceptions allowed."

Upon the record before us we are convinced that counsel for the defendant was clearly within his rights; that the remarks of the court were improper and prejudicial to the defendant. By numerous decisions of this court, it is held that attorneys for a defendant are entitled to and must receive fair treatment at the hands of the trial court, and if the conduct of counsel is improper the court should excuse the jury before administering a rebuke or threatening to fine or imprison counsel for contempt. Hicks v. U. S., 2 Okla. Cr. 626, 103 P. 873; Reed v. State, 5 Okla. Cr. 365, 114 P. 1114; McSpadden v. State, 8 Okla. Cr. 489, 129 P. 72; Harrison v. State, 11 Okla. Cr. 14, 141 P. 236; Smith v. State, 12 Okla. Cr. 513, 159 P. 941.

We may remark here that the state only demands the punishment of a citizen when his guilt has been clearly established according to the forms and rules of law prescribed for ascertaining his guilt. It is not to shield the guilty, but to protect the innocent, that courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty. A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law. And one of the first lessons which a county attorney should learn is that the state does not expect and will not tolerate the use of any unfair means or methods to secure the conviction of one charged with crime. If a conviction of the defendant cannot be had fairly, then the state does not ask for a conviction, because such a conviction would be tainted with, if not founded upon, injustice and wrong. An unfair trial in a criminal case is a reproach upon the administration of public justice, and casts grave responsibility, not only upon the prosecuting attorney, but also upon the trial judge.

For the reasons stated, the judgment in this case is

reversed, with instructions to the trial court to sustain the demurrer to the information and discharge the defendant.

BESSEY, P. J., and EDWARDS, J., concur.